Good morning, Your Honors, and may it please the Court, my name is Gary Watt and I represent the Governor of the State of California, the California Department of Corrections and Rehabilitation, the California Department of State Hospitals, and the California Department of Finance. Your Honors, this Court has said in the prison remediation setting that defendants bear the obligation of establishing why any proposed changes to remedial plans or orders meet the defendant's obligations. This appeal is a simple one. It's simply about giving defendants the opportunity. Well, if it's really that simple, I'm pretty dumb because this has been going on a long time, so that's, I don't know if this is simple for anyone here. Thank you, Your Honor. I wouldn't call the case simple, but I'd certainly call what the defendants are asking here for simple, at least in terms of labels, which is the attempt to meet their burden that the case law says that they bear. So what I plan to do here this morning is to address the jurisdictional question that this Court asked a couple of days ago in its order, and then if I don't run out of time, I will address the merits issue, which is whether the district court was correct in requiring the defendants to file a Rule 60B motion and to unwind the 2017 order before it could get its plan, its telepsychiatry plan, considered on the merits. I'll start with 28 United States Code Section 1292A, which was the focus of this Court's recent order. This Court has said that when looking at orders to determine that are not obvious on their face, whether they're injunctions or not arising out of a motion for an injunction, that the Court looks to see if the order commands or prohibits conduct. If it does, it's called an injunction, and if the Court sees that, then it drills deeper, and in fact, it asks three questions. It asks what the practical effect of that order is, it asks whether there are serious consequences to the order, and it asks whether an effective appeal could be had later. Here, the practical effect of the Court's order on appeal is that it's injunctive. It mandates conduct on the part of defendants. They must include what the Court has now approved as the final telepsychiatry policy in the program guide, which is the mental health care remedy in this case, and they must implement it, they must monitor it, and they must report on it. But it doesn't just mandate contact on the element of practical effects. What it also does is it prohibits conduct. It prohibits the defendants from offering telepsychiatry at all, unless on-site telepsychiatrists are not available for some classes, and for some classes of inmates in the Coleman class, there's no use of telepsychiatry whatsoever. So, and there's more, but I'll stop there and say that this order has the practical effects that this Court looks for under 1292 to see if it's an injunction. So if we determine that the April 2023 order is not a final judgment, should we dismiss the appeal? Or you say it's appealable as an injunction, or what are you saying? I'm saying it's an appealable injunction under 1292A. That's one way to get there. But in my mind, the other way to get there was under final order jurisdiction. And that's what we argued in the brief because foolish of me, I suppose, but I presume that that was so clear that there was a jurisdiction there. And let me explain why. Under 1291, this Court's cases look to see if it's the final order in a line of orders on the particular issue. And then what it looks to see under cases like Armstrong and Flores v. Garland, what it looks to see is what the next proceedings would be like. And let me give an example and then let me apply it to this case if I can. In Flores v. Garland, the determination was that certain minors could not be housed in short-term housing, for example, tenderloin apartments and so on. They can't do that. The order directed them to come up with a not an appealable order. But when the defendants appealed to this Court, this Court said the future appeal will be about the efficacy of the plan to get those minors out of the housing. It won't be about the order saying you can't house them there. And so that's finality in the sense of Flores and in the sense of Armstrong. Well, I see, when I'm sort of looking at all of this, and I don't really want to get into the next case, but, you know, you sort of look at the whole thing here. It's been going on for 20 years. There are certain things that the State has not appealed in the interim. And I understand that, trust me, the last thing I want to do is run the prisons. And I understand that the prisons inherently have issues that they're entitled to certain deference and how they do things. But somehow this 20-hour thing came into place at some point in the past, and it's carried forward. And you're saying now in this appeal that the District Court abused its discretion, either that it committed legal error, I'm not sure, or it committed legal error or both, when it directed the defendants to file a Rule 60B motion to get at the issues that you wanted to address, right? Not exactly, Your Honor. The 20-hour requirement you just referred to is the issue in the next appeal. I know it is. I know it is. I understand that. But I've looked at both of them. I had to look at both of them because both cases are on today. So, but the cases that are cited in your brief, like the City of Los Angeles Harbor versus Santa Monica and the United States versus Smith indicate that the District Court had the inherent authority to consider your proposed revisions. What's your best authority that the District Court was compelled to consider your proposed revisions on the merits, abused its discretion in directing you to file a Rule 60 motion, and how the defendants are harmed by being directed to file a Rule 60 motion? Because you seem to want to bring in, you've got this other person that says there's another way to do it. But why can't you do that on a Rule 60 when this has been going on for 20 years and you're asking the court to change everything that happened in the past based on this new doctor or declaration? Well, first of all, a Rule 60 motion would be required. Now, let me answer that pragmatically. Could we file a Rule 60 motion? Of course we could. Could we ask the court to reset? We could ask the court to reset the trial that never happened. We could. Why didn't you do either of those instead of appealing? Because the issue is whether we have to, Judge Koh. The issue is whether we have to. Rule 60 could be rejected after the first paragraph if the court determines that the 2017 order was a case management order. And let's focus on the 2017 order for a moment. Yes, it had limits in it. It had limits. Let's talk about how this went down. Telepsychiatry was never part of the 1995 judgment. Its use became, started evolving in 1998. It grew slowly in the intervening years. And then there never been telepsychiatry as part of the remediation in this case. And, Your Honor, that's what makes it, at least at the threshold level, that's what gives the defendants the opportunity to alter the remedial plan. And then the... Well, but it seems like you didn't object to certain things. It went along. There was a special master. Everything went along. And then the state didn't do things as well. So you have a court that's kind of frustrated with the state for not doing even a portion of what they've somehow agreed to do. And then you want a Judge Mueller right there just based on this declaration that you presented to get rid of what had been going on for 20 years. And she said, no, go back, file a 60B, litigate that, whatever that is. But go back for what, Your Honor? For what on the 2017 order? And let me speak to that. Defendants came forward with their embryonic telepsychiatry policy. There was no policy. The court said, I'm not accepting this policy. Go to the special master and see if you can come up with a policy. There's still no policy. The court said, see if you can develop a policy. Work with the special master in good faith if you can. And that began what was essentially a four-year process to get to a policy. But something happens in 2018. In 2018, the special master, after a series of compromises, I don't think one can say it's defendant's policy anymore. If we don't cooperate, we're in contempt. We go to these sessions. We try to reach some sort of agreement. But that's not our policy. That's a different policy, right? So what happens in 2018? The special master goes back and reports to the court, you gave me a deadline for a policy. Here's a proposed telepsychiatry policy. There's a lot of disputes about this policy that are not resolved. The court takes papers on it, issues a tentative ruling, and then conducts a hearing. And after the hearing, it changes its mind. And you asked about authority. And this goes to reliance. Well, I guess you were asking the court, based on the declaration that you filed, to change the policy to what your expert said, right? We were asking for an evidentiary hearing, and it could go down in two ways. It could be in the restoration of the hearing, and this brings me to what I was just about to say. In 2018, instead of ruling on the special master's submission, instead of ultimately resolving the objections that the parties had and the disputes they had about the policy that had just been submitted, the court said, I'm not going to rule on this. It's in the order. It's ER 628. Defendants must be given an opportunity, and this is the critical words, in the first instance, to demonstrate why the expansion of telepsychiatry they seek will satisfy their Eighth Amendment obligations. So why didn't you ask for an evidentiary hearing to do just that? You could have presented evidence that would support your proposal. You could have gotten the special master to vet your proposal. From the record, based on the exact language you read, it sounds like the district court would have allowed you to do that if that opportunity had been requested. It did something else instead. It did what it always does, is it ordered the parties to go back to the special master and try to resolve the disputes that remained. It gave the special master time to come back, and it set a hearing. It set the hearing then. The hearing was set. But what happened was, Dr. Golding submitted a report, a whistleblower report in late... No, but I'm saying after it was vacated, after the evidentiary hearing was vacated, why did you not request one? Because we were ordered to go to settlement conference with Judge Drozd, and the settlement conference looked to be a resolution of disputed points in the policy. And the parties were ordered to see if they could resolve the disputes. Now, having never had the chance to show their own policy satisfied the Eighth Amendment requirements that we have the... supposed to satisfy, what the parties did was they reached the stipulation. And the stipulation is interesting because it preserved our rights to have that determination. The stipulation doesn't say that after the test period of 18 months, the parties will meet and confer to see if we fine-tune the special master's policy. The stipulation doesn't say modification shall be limited to tinkering, essentially, with the special master's policy. Rather, and in the spirit of what the exercise was, remember in 2020, the court says that it looks forward... Sorry, in 2020, the court says it looks forward to seeing what can be learned about telepsychiatry, not the special master's policy, but the efficacy of telepsychiatry itself and the role that it could play. It's saying that in 2020. And my point is this. The language in the stipulation was the preservation of the defendant's right to present their policy and it even provided a mechanism to do so by the parties submitting any proposed modifications, any revisions toward a final policy. And so the defendants did submit their revised telepsychiatry policy. And that's when the court said, oh, you can't do that. You have to go back and file a Rule 60B motion. But your honors... So, all right. What do you want us to do now? What do you want us to do now? What the clients would like you to do, your honor, is to do one of two things. To remand to the district court to have it set this matter for a hearing, not on the special master's hybrid policy, the result of all that sausage making and nobody getting what they wanted, but on the defendant's original telepsychiatry policy and the evidence supporting it. And everyone has the benefits of the 18 month test period. The court... So, that hearing, would that vacate everything that's happened for 20 years? No, no, your honor. It wouldn't. First of all, everything that happened for 20 years, this litigation is about 100 more things, or 1,000 more things, in the program guide than telepsychiatry. And nor would it stop the provisional policy right now from being the final policy. It's been ordered to be the final policy. It's been ordered to be added to the program guide. You don't even have to tell the court to stop. You just have to tell them to give the defendants the hearing they should have, and what will happen? What will happen? After actually weighing the evidence, after actually conducting the hearing, the court might say, no, you haven't shown me there's a problem here between telepsychiatry and on-site psychiatry. There's something going on here. I don't believe you've met your burden of proof under Graves v. Arpaio. You haven't met your burden of proof. That's what could happen. But what else could happen? The court could say, lo and behold, we've learned some things, and we should adjust this final policy to allow it to be used more frequently, to allow telepsychiatry to be used on certain classifications where it can't. And what's the result? What is the result? More treatment for the plaintiffs. More psychiatry appointments for the plaintiffs. More delivery of mental health care for the plaintiffs. So if you have to file a 60B, that hearing can still happen, though, right? But you have to file a 60B first and be... We have to jump over the Rule 60B threshold, though. And the Rule 60B threshold is new law, new evidence, and that the 2017 order was a final order. But it wasn't a final order. It wasn't an appealable order. All it said was that for a starting point, we're not going to use this policy that you submitted, defendants. Special Master, take these four control points. Let's call them limitations. So Judge Mueller would hear that 60B, correct? Either way, she would hear this. And so what do you think that 60B's illusory, and you would lose on a 60B, and then you're stuck with whatever... You're right. Just as we would be stuck if we just asked to reset the hearing. And I see I'm into my three minutes. Sure. I'll reserve it. Let me find out if my colleagues have any questions before I let you sit down. No, thanks. Thank you. Okay. I'll give you three minutes. Thank you. Good morning. Are you adjusted? I can tell you're more my size here. Good morning, Your Honor. Can you hear me?  Judge Graber, can you hear her okay? Yes, I can hear fine. Thank you. Good morning. My name is Lisa Els. I represent the plaintiff class. The state just got up here and told you an entirely made-up history. Today, thanks to the 2017 injunctive order and the parties, not the special masters, 2020 stipulated policy implementing it, the state has unfettered authority to provide care for over 75% of mentally ill patients in its prisons entirely by telepsychiatry and to use telepsychiatry for some patients at higher levels of care as well. But the state now wants to eliminate all of the guardrails on the use of telepsychiatry the court imposed after 1,000 pages of briefing and evidence in 2017. The state's proposed policy would allow 100% of patients, even those in suicidal crisis or confined to psychiatric hospitals, to never see a live psychiatrist again. In the face of this record, the state has identified no basis for reversal, assuming this court finds jurisdiction over this interlocutory case management order in the first place, which it should not. Counsel, I'd like to ask you about the finality question. The 2023 order, the April 2023 order, states that the earlier provisional policy is adopted as final, and final is in caps, and that the special master's recommendations are adopted, and adopted is also in caps. So why isn't that a final order with respect to a segment of this matter? Or at least, why isn't it injunctive within the meaning of 1292A? So taking your question as to 1291 final order first, in the Flores case, the court was instructed to look at whether the district court expressly contemplated future action. So in this case, the 2023 order is merely effectuating the injunction from 2017, which required implementation of a policy within the limits of the 2017 order. But the 2017 order anticipated future things. It said a bunch of conferences and so forth. So it was forward-looking. You're right, Your Honor. Excuse me, I didn't mean to cut you off. It was forward-looking to the extent that it required implementation of a policy. But under the Armstrong 2010 decision, that is not enough to make it non-final. Essentially, what the court ordered here, again, after a thousand pages of briefing and evidence, was it adopted certain injunctive limitations on the State's use of telepsychiatry while allowing it to be used for the vast majority of patients in the system. It then required the State to implement a policy within a year, effectuating those limitations. And under the Armstrong 2010 decision, that is sufficient for finality. There was nothing more that needed to be done except to implement the policy according to the court's limitations. Except then the court issued another order in 2018, which also seemed to be forward-looking and require good-faith efforts to resolve the remaining disputes. It has, to me, that both 2017 and 2018 have the feel of something that's provisional or a work in progress up until we get to 2023, which is clearly stated to be final. And there's a policy in its final. So why is that an impermissible reading of what happened? Well, two answers, Your Honor. First, in the 2018 orders, and there were multiple of them, the court very clearly said that its 2017 injunction was, in fact, setting mandatory limits. And this court actually affirmed the dismissal of the 2018 order appeal on that exact grounds, finding that the limitations in the 2017 order were mandatory, not permissive. They imposed an injunction, and the 2018 orders effectuated that but did not modify it, and therefore there was no jurisdiction. So I think under law... Well, this one modifies it, does it not? It's different than 2017. So why isn't this one... If 2017 is injunctive, why isn't this a new injunction, regardless of whether the other ones were or were not provisional? Well, Your Honor, I would say that the best argument is just to look back to the text of this court's 2019 order in this case with respect to the prior telepsychiatry appeal. So the 2017 order required implementation of a policy within a year that effectuated the limitations that the court imposed. So what happened here is after that, defendants had the opportunity under Rule 60 to establish that those limitations were not appropriate in 2018. Well, let's say if we affirm the district court here. I'm curious. I always like to... Lawyers are so clever that would the defen... If we affirm the district court here, can the defendants still file a 60 motion or are you going to say they can't? Oh, absolutely. And we said in our papers that they can. The court has invited this many times.  Starting in 2018. Would you agree that the court can consider the merits of defendants' proposed revisions or was it barred by prior orders or law of the case from considering the merits of the defendants' proposed revisions? So, I mean, they want to reconsider that. They want this telepsychiatry information to be reconsidered by the court and possibly modify what either they've agreed to or what's been said before or whatever. And I'm seeing down the road that, let's say, even they get granted that opportunity, then you're going to say, oh, no, no, no, no. There's law of the case. You can't reconsider this. There's no movement. Your Honor, we don't contest that the state could have slapped a Rule 60 pleading caption on these exact papers and filed a motion to modify. They could have done that at any point. They can do that today. But they don't want to meet the Rule 60 burden. And they say that in their papers. That is not a reversible error. What do you see as the impediment for them to meet the Rule 60? I mean, it imposes a burden on them to show that circumstances have changed. And under RUFO, and that's exactly what the court said in its papers, this is a case management order simply instructing them to follow federal procedure. And there is nothing that is an abuse of discretion in that. But you're basically saying they don't have a legitimate 60B. Well, we would contest that circumstances have, in fact, changed, but they certainly, for the same reason that we contested that these changed. Well, I guess they're saying it's illusory. And so if we look at that declaration and say someone should look at that and someone should assess it in the entire is 60 really illusory and should the court have set a hearing right here to look at it? I mean, this has been going on for a very long time. And I can't, I can't, and I have a feeling it may be going on for the rest of my natural life, that being said. But it would seem that at some point the state who has to administer this should be able to talk about telepsychiatry. Now, I don't know how that would come out, but it seems like they don't want to talk about it in the venue that the court says you should talk about it. You don't really want them to talk about it at all because you want to preserve the 20 hours, which seems pretty high. I mean, I don't know, not having been involved in all of that, I don't know that there's anything I do 20 hours during the week. And you have, what, 1,000 prisoners that supposedly are supposed to get 20 hours of a certain type of psychiatric treatment. Is that right? Your Honor, I think that you're conflating the two. No, I'm not. I know, but it's hard not to look at what's on the other side of it because it's still all one thing. I appreciate that, but that has nothing to do with telepsychiatry. This is telepsychiatry only, and that relates to a specific treatment modality that is not psychiatric in the inpatient program. So the 20 hours is not particularly relevant here. So you say that telepsychiatry has nothing to do with the 20 hours. Correct, Your Honor. Would they say the same thing? Is he going to get up and say the same thing? I believe so. I believe he will say that as well. Okay, we'll find out. The only way in which they dovetail is that the state's proposed policy would allow for the use of telepsychiatry in the inpatient programs if it were adopted. However, again, the 20 hours is specific to structured therapeutic treatment, not psychiatric contacts, so it wouldn't actually have any effect on the 20-hour injunction. But to your point, when should the state be able to raise these questions and have a determination, again, Your Honor, the Rule 60 burden is clear and established because the 2017 order, as this Court has already held, was injunctioned. Was anyone doing telepsychiatry in 2017? Yes. I mean, COVID kind of changed a lot of things for everyone, admittedly. Well, yeah. I mean, so the state had been doing a small amount of telepsychiatry for years. It just had no policy or limitations governing how it was used. But I want to be very, very clear. The state has continued to talk about the special master's policy. The special master had nothing to do with this except effectuating the monitoring of the provisional policy and setting forth the recommendations that the court adopted as mandatory in 2017. Well, and what part of this had the state agreed to, and was there frustration on part of the district court that they hadn't done what they agreed to do? Well, the state did dispute that there should be any limitations in 2017, and they lost, and they didn't appeal that. So the 2017 limitations were fully litigated, and the state lost, and it chose not to appeal. It has to live with the consequences of that, which is that the Rule 60 RUFO standard applies. Can we go to the Rule 60b motion? Is there any limiting principle, or can any district court say, this order is effectively unappealable until you file a Rule 60b motion? There has to be an injunction in place or a judgment in place in the first instance. And in this case, this court has already held that there was. It's the 2017 order. So that, I think, is the limiting principle. But if we go back to Judge Graber's original question, the 2023 order set forth the operating telepsychiatry policy going forward. So I guess I've... And also, I would point out that it refers to, on ER-6, it refers to the 2017 order as provisionally approved, which I understand that there's been some loose language, both in the orders and in... I just don't understand why this, even if that wasn't provisional, why this isn't a new injunction, because it adopts something new and different in final form. So, Your Honor, as to... I believe we're talking about jurisdiction under 1292A1 at this point. And the question under the Thompson case and this court's application of Thompson to the 2018 telepsychiatry order in finding there was no jurisdiction, the question is, what is the practical effect? There is no injunctive practical effect from this order because all that it required is effectuation of the 2017 requirements that it have a policy in place within the limits that the court prescribed in that order. So they are required to have a policy in place. They don't dispute that they like this policy. They use it for 75% of the patients in the system. They would just like to use it more. But the other two requirements are that the state show substantial harm and inability to seek relief in a later appeal. There is no harm here whatsoever. The state's best articulation of harm is that they shouldn't have to bring a Rule 60 motion. That is not a substantial injury. And moreover, they can get relief from a later appeal. Anything that they want that the court won't let them do in terms of expanding the limitations of telepsychiatry, they can get relief by appealing a Rule 60 denial. That is how they get relief on the merits here. So if we hypothetically assume they filed the Rule 60, they lose, then they appeal that, and then here we are. Hello. Yes, that is by definition appealable under 1292A1. It is a denial of modification of an injunction. So there's no question they can get here on the merits. What kind of proposed telepsychiatry changes would have been within the scope of the stipulation? So, first of all, anything that the special master and the parties agreed was appropriate to expand. We did, in fact, reduce the limitation from the 2017 order by stipulation. The original order required that telepsychiatry for the lowest level of class members could only be used as a supplement. We agreed it could be used all the time, 100% of the time, even for that 75% of the patient class. So anything that the parties and special master agreed was appropriate. Moreover, there are various things in the policy, including how we implemented the notion and the limitation from the 2017. So that wouldn't have given the defendants an opportunity to propose something that the special master and the plaintiffs didn't agree to. Is that correct? You're right. We could have agreed to that. But putting that aside, you're talking about just the… You're saying the only things that the defendants could have proposed changing after the stipulation were what the special master and the plaintiffs agreed to. So that doesn't really give them the hearing that counsel just stated is in the district court order, that they should be allowed to present their changes in the first instance, does it? Are you talking about from the 2018 order at this point? Yes. The language that they, I have it in here, that he just read at the beginning of his statement, that says they should be in the first instance be allowed to present. Yes. If you look carefully at that 2018 order from September of 2018, the court very clearly says we are having this trial so that defendants can establish their Rule 60 burden to show that the 2017 injunction should be modified. So from the very start, they have not sought to do that because they cannot establish changed circumstances or simply don't want to try. So if you look carefully at that order, that is the reason, I believe, that they have not tried to reset that hearing is because it's the same standard that the court is telling them they ought to meet through a Rule 60 motion. So, you know, so looking back, I think going back to your earlier question about what kind of changes may have been possible. So, again, the special master's monitoring period could have shown that certain things were appropriate to change. For instance, we all agreed that the limitation, that telepsychiatry, could only be performed by clinicians sitting in hub offices. We agreed, all of us agreed, after the provisional period to eliminate that. So we've done that by stipulation. But other things that could have been possible could have been, for instance, changing the way that supplement was defined, changing the notice period for when an emergency existed that would allow use of telepsychiatry in the inpatient programs. So certain things within the parameters of the pretty broad, I'm sorry, pretty narrow limitations from the 2017 order, all of those could have been appropriate. But that's not what the state wanted. The state wanted to just throw the 2017 order out and pretend it never existed. But there's nothing in the stipulation language that remotely indicates that that was the intent of the parties or the court in granting that stipulation. So your view is they are entitled to an opportunity in the first instance to show why telepsychiatry should be expanded only if they can meet the requirements of Rule 60B, change in the law or change in circumstances. There's no other way that they will be allowed to present any other proposed changes. No. So I view the 2017 order as kind of a funnel. This is unlimited telepsychiatry at the top. These are some limitations imposed by the court after 1,000 pages of briefing and evidence presented by the parties. The court imposed some limitations, and anything below that was open to interpretation and negotiation in the policy form. But what they want to do is evade that second level of the funnel. They want to get to the very top where they can have unlimited telepsychiatry. But the limitations from the 2017 order are an injunction. They were fully litigated. The state did not appeal. This court has already said those were mandatory limitations in its 2019 order. So to get to the state where they can sort of exceed that limitation, again, anything underneath that is permissible. Those were the kind of changes we all anticipated. Anything above that that the parties didn't agree was appropriate. Again, we've stipulated to multiple modifications that expanded those 2017 requirements. Anything, though, that was contested is a Rule 60 burden. That is the burden that is appropriate under the federal rules in RUFO, and the state simply doesn't want to try and meet it. Okay, you have about 31 seconds. Do you want to wrap it up? I think that's it for me unless there are further questions. No, thank you. No, we don't have any further questions. Thank you for your argument.  Your Honor, counsel just referred to the September 20, 2018 order and asserted that it was all about go and establish your Rule 60 basis. It's about Rule 60. And I'm looking at ER 638, and it says it is hereby ordered, one, the hearing for the defendants to establish whether their plan satisfies the Eighth Amendment is set for October 15th. And then it goes through Paragraph 2, exchange witness list. Paragraph 3, file joint witness list. Four, nothing authorizes discovery, et cetera. And then five, in the meantime, ER 638, the obligations to continue developing a telepsychiatry policy continue. Just because I'm setting these hearings, you must continue to go forward with the special master's plan. And this is the same order. This is the same order, September 20, 2018, in which the Court was saying these things on page 638 because of what it said on page 628 of the same order. But your proposed changes were not vetted by the special master, correct? No, they weren't. So why was it an abuse of discretion for the district court to not consider it because you didn't vet it through the special master? I mean, you're just going through ER 638. Clearly, it was envisioned that everything would be in accordance with the special master's plan. It starts in 2017, Your Honor. The defendants have never had a policy. They want to have a policy. They create a draft policy, 2017. The Court says, I'm not ruling on whether this satisfies your Eighth Amendment obligations here. But what I am going to do is for prophylactic reasons, for pragmatic reasons, I'm going to direct you to go to the special master, and the special master can bring the plaintiffs if he wants. And let's see if you can develop a policy. But for now, for now, think of it as design criteria. For now, I want you to maintain these limitations. These are not Eighth Amendment tried and resolved limitations. The Court is saying, I don't want you to use them on these classes yet. I don't want you to go not that far, not that much, not just yet. That's what they call etched in stone Eighth Amendment resolution. That's not it. It never happened. And so we come to this order in 2018, and the Court's saying, I'm glad you're moving it along. I'm glad there's progress. Let's have the 18-month trial period on the special master's policy. And it is the special master's policy. It's not our policy. And the Court says, this will be very helpful. I'm going to quote, an enlightening period for assessing the proper role telepsychiatry may play in the delivery of mental health care. Well, we are under a constitutional system in which agencies draft policy. And sure, they don't get to write on a clean slate in a remedial setting, but they at least get a first crack at it. And they've never had that. They've never had what this Court said in Graves v. Arpaio that they must have. They must have the opportunity to show that the policy they come in the door with because of their expertise, because of all the responsibility they're charged with, they must have the opportunity to have that policy vetted before a court starts to substitute a special master's judgment, the Court's judgment, or anybody else's judgment. Thank you, Your Honors, for the opportunity to present this argument. Thank you both for your helpful arguments. This matter will stand submitted. We now call the next.
judges: GRABER, CALLAHAN, KOH